[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14011
Non-Argument Calendar
_____

D.C. Docket No. 5:13-cv-00196-GKS-PRL

BYRON O'NEAL, SR.,

Plaintiff - Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 10, 2015)

Before MARCUS, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Byron O'Neal, Sr., appeals from the district court's decision to affirm the

Commissioner of Social Security's denial of Mr. O'Neal's application for

disability insurance benefits and supplemental security income.  On appeal, Mr. O'Neal argues that the administrative law judge ("ALJ") erred by finding that he did not meet the requirements of the listed impairment for mental retardation, 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(C) ("Listing 12.05(C)").  Because substantial evidence supported the ALJ's determination, we affirm the district court's entry of summary judgment for the Commissioner.

I.

Mr. O'Neal filed for social security disability insurance benefits and for supplemental security income.  The Social Security Administration ("SSA") denied his application both initially and on reconsideration.  Mr. O'Neal then requested a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ denied Mr. O'Neal's application.  The next day, the Appeals Council granted Mr. O'Neal's request for review and remanded the case to the ALJ to further develop the record with medical treatment records, including opinion evidence from Mr. O'Neal's doctors, and to explain the reasons for the decision. The ALJ held a second hearing and again denied the application.  This time, the Appeals Council declined Mr. O'Neal's request for review, and the rejection of his application became final.

Mr. O'Neal then filed this lawsuit.  Adopting the magistrate judge's report and recommendations, the district court affirmed the ALJ's decision.

II.

In Social Security appeals, we review *de novo* the legal principles upon which the ALJ's decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). We may not decide facts anew, make credibility decisions, or re-weigh the evidence. *Id.* Instead, we review the Commissioner's ultimate decision only to determine whether it is supported by substantial evidence. *Id*. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971) (applying *Consolidated Edison*'s substantial evidence standard to disability determinations under the Social Security Act). When a decision is supported by substantial evidence, we must affirm, "[e]ven if we find that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

III.

A.

To be eligible for disability insurance benefits or supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

3

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(a)(1)(E) & (d). To determine whether a claimant is disabled, the Social Security Act applies a five-step sequential evaluation. 20 C.F.R. § 404.1520(a) (establishing the five-step evaluation for disability insurance benefit claims); 20 C.F.R. § 416.920(a) (applying the same five-step inquiry to supplemental security income claims). If the claimant is conclusively found to be disabled or not disabled at any step, then the ALJ does not proceed to the next step.

At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4). If not, then the claimant must show at step two that her impairment is "severe," *i.e*., that it "significantly limits [her] physical or mental ability to do basic work activities." *Id*. § 404.1520(c). If the claimant makes that showing, then at step three she must show that she has an impairment that meets or equals the criteria contained in the Listings of Impairments. *Id*. § 404.1520(a)(4). If the claimant meets her burden of proving that her impairment meets or equals a Listing, then she is determined to be disabled. 20 C.F.R. §§ 404.1520(a), 416.920(d). If she does not, then at step four, the ALJ considers the claimant's residual functional capacity ("RFC"), which determines whether the claimant could still perform her past relevant work activity. *Id*. If the claimant could not do so, then the ALJ moves to step five and determines

4

whether, in light of the claimant's RFC, age, education, and work experience, the claimant could perform other work. *Id.* If so, the claimant is not disabled; if not, the claimant is disabled.

## B.

On appeal, Mr. O'Neal argues that the ALJ erred at the third step of the analysis by failing to conclude that he is disabled under Listing 12.05, which covers intellectual disability. To prevail at step three, Mr. O'Neal must provide evidence showing that his impairment meets all of the criteria in the Listing. If his impairment meets all of the Listing criteria, then he is "conclusively presumed to be disabled," and the ALJ should have approved his application. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).

To qualify under Listing 12.05, Mr. O'Neal must first meet the diagnostic criteria in 12.05's introductory paragraph: he "must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Id.*; *see also* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 ("Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability."). In addition, Mr. O'Neal must meet the specific severity requirements in one of the subparagraphs, A through D. He argues that he qualifies under 12.05(C), which requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a

physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(C). The Commissioner does not dispute that Mr. O'Neal meets the requirements of subsection (C). Rather, the Commissioner argues the ALJ correctly determined that Mr. O'Neal failed to establish that he meets the additional requirements found in the diagnostic description in the Listing's introductory paragraph.

At step three, the ALJ determined that Mr. O'Neal "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." Although Mr. O'Neal is correct that there was no explicit finding regarding Listing 12.05, the ALJ did "give[] particular consideration to. . . [Listing] 12.00 et seq., Mental Disorders," in reaching this determination. The district court adopted the magistrate judge's recommendation to uphold the ALJ's implicit rejection of Listing 12.05 because Mr. O'Neal "failed to establish—let alone even mention—that he meets the additional requirements found in the diagnostic description in the introductory paragraph."[1]

We agree with the district court that substantial evidence supports the ALJ's determination that Mr. O'Neal does not meet the criteria for presumptive disability

---

[1] *See Hutchinson v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (holding the ALJ implicitly found that the claimant did not meet a Listing because it was clear from the record that the ALJ had considered the relevant law and evidence).

under Listing 12.05.  The introductory paragraph in 12.05 requires that Mr. O'Neal exhibit (1) significantly subaverage general intellectual functioning (2) with deficits in  adaptive  functioning (3) that manifested before age 22.  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05; *Crayton*, 120 F.3d at 1219.  Even though the SSA has not specifically defined "deficits in adaptive functioning," the Diagnostic and Statistical Manual of Mental Disorders ("DSM") states that adaptive functioning "refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociological background, and community setting." DSM-IV-TR at 42.  Although Mr. O' Neal has a qualifying full scale I.Q. score of 63, which creates a rebuttable presumption that he manifested deficits in adaptive functioning before age 22, the Commissioner may present evidence relating to a claimant's daily life to rebut this presumption.  *See Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001).

The record evidence shows that Mr. O'Neal held a job as a dishwasher for many years without receiving any special accommodation or training.  He quit his job only for family reasons.  Afterward, he worked occasionally as a handy man, helping with carpet and trim work and installing siding.  Mr. O'Neal helps at home with light yard work, looks after his two children, independently performs all his activities of personal care and daily living, and attends church every Sunday.  He

holds a driver's license and drives locally three times per week.  These facts support the ALJ's implicit conclusion that, despite his low I.Q. score, Mr. O'Neal does not have sufficient adaptive functioning deficits to meet the requirements of the diagnostic description in Listing 12.05.  While there may be other record evidence to support Mr. O'Neal's arguments, there is substantial evidence to support the ALJ's decision.  Accordingly, we must affirm the district court's order and the Commissioner's decision.

**AFFIRMED.**